FILED

2024 Mar-11  AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

LISA DAVIS TREADWAY,           )
                               )
      Plaintiff,           )
                               )
    vs.                        )     Case No.  4:22-cv-01282-HNJ
                               )
SOCIAL SECURITY ADMINISTRATION, )
COMMISSIONER,                  )
                               )
     Defendant.            )

## MEMORANDUM OPINION

Plaintiff Lisa Treadway seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability and disability insurance benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 16).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."  *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02.  *Id.* at § 404.1520(d).  If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii),

404.1525.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11ᵗʰ Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11ᵗʰ Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. § 404.1520(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* § 404.1520(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  *Id.* § 404.1512(b)(3), 404.1520(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* § 404.1520(a)(4)(v); *see also id.* § 404.1520(g).

If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

4

## FACTUAL AND PROCEDURAL HISTORY

Treadway protectively filed an application for a period of disability and disability insurance benefits on September 22, 2020, alleging disability as of April 1, 2018.  (Tr. 163-67).  She later amended the disability onset date to May 17, 2020.  (Tr. 15, 39).  The Commissioner denied Treadway's initial claim and her request for reconsideration.  (Tr. 71-92, 96-101, 103-07).  On June 21, 2021, Treadway filed a request for a hearing.  (Tr. 108-09).  On December 2, 2021, the ALJ held a hearing.  (Tr. 34-66).  On December 14, 2021, the ALJ issued an opinion denying Treadway's claims.  (Tr. 12-29).

Applying the five-step sequential process, the ALJ found at step one that Treadway did not engage in substantial gainful activity after May 17, 2020, her amended alleged onset date.  (Tr. 17).  At step two, the ALJ found Treadway manifested the severe impairments of right knee arthritis and obesity.  (Tr. 18).  At step three, the ALJ found that Treadway's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21).

Next, the ALJ found Treadway exhibited the residual functional capacity ("RFC") to perform light work, with the following additional limitations:

> avoid concentrated exposure to extreme temperatures, wetness, and humidity; avoid concentrated exposure to pulmonary irritants; no uneven terrain; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; no balancing as defined by the Dictionary of Occupational Titles; occasionally stoop; no kneeling, crouching, or crawling; no excessive vibration; no unprotected heights or hazardous machinery; no pushing of leg controls with the right lower extremity; and no assembly

line production requirements.

(Tr. 22).

At step four, the ALJ determined Treadway could perform her past relevant work as a medical records clerk. (Tr. 28). Accordingly, the ALJ determined Treadway has not suffered a disability, as defined by the Social Security Act, since May 17, 2020. (Tr. 29).

Treadway timely requested review of the ALJ's decision. (Tr. 7-8, 159-62). On August 10, 2022, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-5). On October 5, 2022, Treadway filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Treadway argues the ALJ improperly evaluated her self-described limitations and thereby improperly concluded she retained the residual functional capacity to perform a limited range of light work. For the reasons discussed below, the undersigned concludes Treadway's contentions do not warrant reversal.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The claimant's RFC represents "the most [he or she] can still do despite [their] limitations." *Id.* at § 404.1545(a)(1). Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See id.* at § 404.1527(d)(2) ("[T]he final responsibility for deciding [a claimant's

RFC] is reserved to the Commissioner."); *id.* at § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11ᵗʰ Cir. 2021) (citing 20 C.F.R. § 404.1546(c)) ("The Commissioner of the Social Security Administration has, at the hearing level, delegated to an administrative law judge the responsibility of determining a claimant's residual functional capacity and whether the claimant is disabled."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ.").

Treadway argues her self-described limitations contradict the ALJ's finding she retained the residual functional capacity to perform a limited range of light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In her January 8, 2021, Function Report, Treadway stated she cannot sit, stand, or walk for long periods of time. She adequately performs all personal care tasks, except her spouse sometimes helps her to the bathroom when she experiences stomach pain.

She needs reminders to take her medications.  She cooks only simple meals because she can stand only for short periods of time.  She can perform chores like laundry, dishes, and occasional vacuuming, but she needs extra time and sometimes assistance from her spouse to complete those chores.  She can drive and leave the house alone.  She shops in stores every two weeks, but only for short periods of time, as her knee pain limits the length of time she can stand.  Her hobbies include reading, watching television, and light sewing, but sometimes she feels too tired to do those activities.  She socializes with others in person and over the phone.  Because of her symptoms, she leaves home less frequently than in the past.  Her knee pain affects her ability to lift, squat, bend, stand, walk, sit, kneel, remember, and concentrate.  She can walk for less than ten minutes before she needs to sit.  (Tr. 217-24).[2]

During the December 2, 2021, administrative hearing, Treadway testified knee pain and arthritis, particularly on the right side, present the most significant impediments to her ability to work.  She underwent two meniscus repair surgeries in her right knee, with the most recent surgery occurring in 2018.  Three to five times a week, her right knee buckles while she walks.  She does not use an assistive device, and she has never fallen, but she holds on to things like grocery carts to help her walk.  She experiences level-seven arthritis pain in her right knee two to three times a week.  Taking Tylenol or Celebrex completely reduces the pain within a couple of hours.  She

---

[2] Treadway also described limitations due to memory problems, fatigue, and depression, but in her brief, she does not rely on those symptoms as a basis for a disability finding.

experiences level-five pain in her left knee approximately once a week, but Tylenol eliminates the pain within an hour. (Tr. 45-49).[3]

Any type of exercise, even a three-minute walk to her mailbox, causes fatigue and shortness of breath. She can stand for two to three minutes at a time, and she can sit in a chair with her legs down for ten minutes at a time. Sitting any longer causes leg pain, and she needs to elevate her legs. She can lift ten to 15 pounds, but lifting 20 pounds causes shortness of breath and weakness in her knees. She cannot bend down to clean her bathtub, but she can do laundry, sweep, and cook. If she cooks, her spouse needs to wash the dishes. Her hobbies including reading and playing Solitaire on her phone. (Tr. 56-60).

According to Treadway, these limitations should prevent her from performing light work. In particular, Treadway asserts the ALJ should have concluded she cannot meet the standing and walking requirements of light work, and she needs a job that will allow her to sit and stand at will – a significant omission as the vocational expert testified Treadway could not perform her past work if she needed to alternate between sitting and standing at 45-minute intervals, and her past work did not provide her any skills she could transfer to employment that would accommodate additional limitations on sitting, standing, and walking. (Tr. 64-65).

A three-part "pain standard" applies when a claimant attempts to establish

---

[3] Treadway also testified she experienced symptoms from irritable bowel syndrome, fatigue, memory problems, and depression (Tr. 50-56), but in her brief, she does not rely on those symptoms as a basis for a disability finding.

disability through her own testimony of pain or other subjective symptoms. [*Wilson* v. *Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021). A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted); *see also Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021).

Social Security Ruling ("SSR") 16-3p eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by

the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, *10; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Applying the pain standard, the ALJ concluded Treadway's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but she nonetheless found Treadway's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 23). Specifically, she considered Treadway's medical records, the results of consultative examinations, objective imaging results, Treadway's daily living activities, and the assessments from state agency physicians. She concluded the evidence, taken as a whole, did "not fully support the claimant's allegations of disabling symptoms." (Tr. 24).

The ALJ found Treadway capable of performing light work because her medical records depicted normal strength, full range of motion, and normal gait. Even so, due to Treadway's knee pain and possible effects of obesity, she limited Treadway's ability to climb, balance, stoop, kneel, crouch, crawl, push with the right lower extremity, and endure unprotected heights, hazardous machinery, uneven terrain, temperature extremes, wetness, and humidity. Even though the record did not contain any evidence

of an underlying medical condition that may result in such symptoms, the ALJ limited Treadway's exposure to pulmonary irritants due to Treadway's complaints of shortness of breath.  Due to Treadway's pain and possible medication side effects, the ALJ limited her from assembly line production requirements.  (Tr. 25).

Substantial evidence supported the ALJ's analysis of the Eleventh Circuit's pain standard, and the ALJ adequately articulated the reasons for her decision.  Moreover, substantial evidence supports the ALJ's decision that Treadway's medical records do not warrant imposition of a sit-stand limitation, or of any other greater limitations than the ALJ assessed.

On February 19, 2020, Treadway established care with Dr. Yoyen Lau, a general practitioner.  She reported her previous primary care provider diagnosed rheumatoid arthritis, but she never saw a rheumatologist.  The clinical examination did not include any musculoskeletal findings.  (Tr. 337-38).  On February 26, 2020, she presented with symptoms of a respiratory illness, and the clinical examination did not include any musculoskeletal findings.  (Tr. 335-36).  On March 19, 2020, she reported increased depression symptoms, and Dr. Lau prescribed Paxil.  The clinical examination did not include any musculoskeletal findings. (Tr. 333-34).

On April 21, 2020, during a rheumatology assessment at Harbin Clinic, Treadway reported level-five low back pain, bilateral hand pain, and bilateral knee pain.  She reported using CBD and ibuprofen for joint pain.  When she worked, she experienced difficulty walking from the office to her car.  Pain and fatigue limit her ability to perform

household tasks.  The clinical examination revealed normal movement of all extremities, and no cyanosis, edema, or varicosities.  She displayed tenderness and slight bilateral crepitus in her knees.  Her knees demonstrated full range of motion, though she moved slowly.  She also presented tenderness to palpation of the hips.  The provider observed no hot swollen joints that caused suspicion of rheumatoid arthritis, but Treadway displayed clinical signs of osteoarthritis that her general practitioner could treat.  The provider recommended Tylenol for pain as needed, as Treadway should avoid anti-inflammatory medications due to her stomach problems.  An x-ray of Treadway's left knee revealed mild early osteoarthritis, and an x-ray of her right knee revealed advanced degenerative arthritis with bone-on-bone findings in the medial compartment.  (Tr. 298-304).

On June 17, 2020, Treadway returned to Dr. Lau reporting bilateral knee pain and symptoms of irritable bowel syndrome.  Dr. Lau prescribed Celebrex, but the clinical examination did not include any musculoskeletal findings.  (Tr. 331-32).  On October 1, 2020, Treadway reported seeing a rheumatologist, who assessed osteoarthritis.  Celebrex really helped her arthritis symptoms.  The clinical examination did not include any musculoskeletal findings.  (Tr. 329-30).  On December 7, 2020, Treadway presented with a urinary tract infection, and the clinical examination did not include any musculoskeletal findings.  (Tr. 327-28).

On April 9, 2021, Treadway reported attempting to exercise but experiencing shortness of breath.  Dr. Lau detected tenderness in her bilateral knees and advised her

to increase her activity level.  (Tr. 325-26).  On July 9, 2021, she reported her knees bothered her "from just standing and doing practically nothing."  Her knees sometimes give out, but she catches herself before she falls.  Celebrex helps with her pain and stiffness.  She feared continuing to take Paxil would cause cancer.  The clinical examination did not include any musculoskeletal findings.  Dr. Lau advised Treadway to follow an exercise program and engage in activity as tolerated.  (Tr. 354-55).

The ALJ also relied upon Dr. Morton Rickless's two consultative assessments from April 9, 2019, and April 12, 2021.  On April 9, 2019, Treadway informed Dr. Rickless she suffered from untreated colitis and pain in multiple joints from rheumatoid arthritis.  The clinical examination revealed full range of motion in the upper and lower extremities, normal circulation and sensation, and no joint swelling, deformity, clubbing, or atrophy.  The back examination produced normal results.  Treadway displayed normal gait, could squat and stand on her heels and toes, and could sit on and arise from the examination table.  Neurologically, she displayed full muscle strength; normal sensation, reflexes, grip strength, and fine and gross manipulation; negative Romburg signs; negative straight leg raising test; and no atrophy.  She reported no dizzy spells, seizures, or blackouts.  She could make a fist, oppose her thumb to her fingers, button and tie shoelaces, pick up small objects, hold a glass, and turn a doorknob. She did not use an assistive device, and she displayed good effort and motivation.  An x-ray of the right knee showed partial loss of the medial joint space.  Dr. Rickless assessed Treadway with untreated colitis causing pain two to three times a week with diarrhea,

nausea, fever, and chills, and rheumatoid arthritis by history causing pain in the joints, especially the knees. However, he noted no evaluation or treatment for arthritis or knee pain existed in the record. (Tr. 279-86). In summary, Dr. Rickless stated: "This lady can sit. She would have limitations on standing and walking. Lifting and carrying appropriate for age and sex. She can handle objects. She can hear and speak. Traveling would be limited. She certainly needs to get treated for her medical problems." (Tr. 284).

On April 12, 2021, Treadway reported to Dr. Rickless that she experienced knee pain and buckling, arthritis, stomach pain and diarrhea three to four times a week, mental problems, memory problems, and "[p]roblems standing and walking; however, she does walk normal and does drive." (Tr. 347). The clinical examination revealed normal range of motion in all joints, other than reduced flexion of the dorsolumbar spine. Treadway displayed normal sensation and circulation, no atrophy, normal muscle and grip strength, and normal fine and gross manipulation. Dr. Rickless described her right knee as stable. She presented normal heel-toe gait, and she could sit on and arise from the examination table, but she experienced trouble squatting and standing on her heels and toes. She could make a fist, oppose her thumb to her fingers, button and tie shoelaces, pick up small objects, hold a glass, and turn a doorknob. She did not use an assistive device, and she displayed good effort and motivation. An x-ray of the right knee revealed loss of medial joint line with evidence of patella femoral arthritis. Dr. Rickless assessed chronic pian with arthritis in the right knee, irritable bowel syndrome,

and mental problems, though he noted Treadway had not seen a psychiatrist or psychologist. (Tr. 348-53). In summary, Dr. Rickless stated:

> This lady can sit and stand but would have some limitations due to chronic knee pain. IBS not controlled certainly would affect her ability to work. Additional complaints are out of the expertise of this office. She does drive. She can hear and speak. She can use her upper extremities. She can travel short distances.

(Tr. 350-51).[4]

Though, as the ALJ observed, Dr. Rickless did not provide a statement about what Treadway can still do despite her impairments (Tr. 27), Dr. Rickless's assessment that Treadway experiences some limitations due to chronic knee pain comports with the ALJ's residual functional finding, which included some limitations related to knee pain. Dr. Rickless's mostly normal clinical findings – including normal range of motion, normal sensation and circulation, no atrophy, normal muscle strength, stability in her right knee, normal gait, and normal ability to sit on and arise from the examination table – also support the ALJ's conclusion that Treadway can perform the sitting, standing, and walking requirements of light work.

The opinions of the state agency physicians also support the ALJ's decision. *See* 20 C.F.R. § 404.1513a(b)(1) (ALJ should consider opinions from state agency medical consultants like other medical evidence, as such consultants "are highly qualified and experts in Social Security disability evaluation"). On April 22, 2021, Dr. James P. Bailey,

---

[4] Treadway also underwent consultative examinations to assess her mental functioning, but again, her briefs in this action do not advance arguments for disability based upon mental limitations.

an orthopedic specialist, found Treadway could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to ten pounds. Within those weight restrictions, she experienced no additional limitations on her ability to push and/or pull with her upper and lower extremities. She could stand and/or walk for about six hours in an eight-hour workday, and she could sit for about six hours in an eight-hour workday. She could never climb ladders, ropes or scaffolds, but she could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She possessed no manipulative, visual, or communicative limitations. She could tolerate unlimited exposure to noise, but she should avoid all exposure to hazards such as machinery and heights, and she should avoid concentrated exposure to extreme cold and heat, wetness, humidity, vibration, fumes, odors, dusts, gasses, and poor ventilation. (Tr. 79-81).

On June 4, 2021, in connection with Treadway's request for reconsideration, Dr. Krishna Reddy, a neurology specialist, imposed the same limitations as Dr. Bailey. (Tr. 89-90).

The ALJ's RFC finding comports with these state agency assessments, except that the ALJ imposed some additional limitations, including only occasionally pushing and pulling with the right lower extremity; no balancing, kneeling, crouching, or crawling; no assembly line production requirements; and no excessive vibration.

As the ALJ noted, the medical findings depict advanced degenerative changes resulting in bone-on-bone contact in Treadway's right knee. However, a mere finding of advanced degenerative changes does not necessarily equate to functional limitations

17

that would preclude full-time work. *See Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation.  However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").  Despite her arthritic knee, Treadway exhibited full range of motion, full strength, intact sensation, and normal gait.  Those functional findings provide substantial evidentiary support for the ALJ's assessment.

The ALJ also appropriately considered that medication significantly reduced Treadway's pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (Commissioner should consider the effectiveness of a claimant's medications in assessing the claimant's symptoms).  In addition to medical findings depicting the effectiveness of her medication, Treadway testified during the administrative hearing that Celebrex and Tylenol completely eliminated her pain.

Though an ALJ may permissibly consider a claimant's daily activities in assessing RFC, 20 C.F.R. §§ 404.1529(c)(3)(i), Treadway argues the ALJ mischaracterized her activities, which she says reflect only sporadic, sedentary behavior and do not

demonstrate an ability to work full-time.  The record does not support that argument, as the ALJ's description of Treadway's activities comports with her function report and testimony.[5]

Treadway also argues many of her activities (personal care, driving or riding in a car, shopping, managing finances, reading, watching television, sewing, spending time with others, using the phone, and visiting grandchildren) represent only sedentary abilities and do not support a capacity to perform light work.  In addition, she asserts she performs other, non-sedentary activities (including preparing meals, washing clothes and dishes, and vacuuming) only sporadically, not on the sustained basis necessary to perform full-time work.

The court agrees Treadway's reported activities would not in and of themselves equate to the ability to perform full-time light work.  However, the ALJ did not rely solely upon Treadway's daily activities to reach an RFC finding.  Rather, when combined with the other evidence of record, the ALJ concluded the activities

---

[5] Treadway's reply brief asserts the Commissioner waived the right to refute her argument that the ALJ mischaracterized her daily activities:

> As demonstrated on pages 11-12 of Plaintiff's opening brief, the ALJ mischaracterized her daily activities as purported support for her findings.  But SSA simply recites the same mischaracterization in defense of her decision . . . without discussing the full extent of her daily activities as confirmed by the record as a whole and set forth in Plaintiff's brief.  SSA's failure to directly confront these premises should be treated as waiver as to all of them.

(Doc. 19, at 1).  That argument falls short, as neither the ALJ nor the Commissioner's brief mischaracterized Treadway's daily activities.  Moreover, the Commissioner's brief responded substantively to Treadway's contention that the ALJ erroneously considered her daily activities.  (Doc. 18, at 9-10).

undermined Treadway's subjective complaints, and she reached an RFC finding supported by the record as a whole.   That determination found support both in applicable law and in the record evidence.   *See Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013) (the claimant's daily living activities, coupled with her medical evidence, supported the ALJ's adverse determination as to the claimant's level of pain); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability . . ., that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (citations omitted)); *Eubanks v. Berryhill*, No. 5:16-CV-1487-VEH, 2017 WL 5187835, at *3 (N.D. Ala. Nov. 9, 2017) (substantial evidence supported the ALJ's pain assessment because he properly considered the claimant's daily living activities together with the objective medical evidence).

Treadway also argues the ALJ erred by failing to mention her long work history when evaluating whether to accept her subjective complaints of limitations.   Social Security regulations advise claimants that in assessing symptom-related functional limitations, the Commissioner "will consider all of the evidence presented, *including information about your prior work record* . . . ." 20 C.F.R. § 404.1529(c)(3) (emphasis supplied).

Treadway asserts SSR 16-3p "also requires the ALJ to consider a claimant's demonstrated willingness to work as part of the credibility assessment . . . ." (Doc. 17,

at 13), but the ruling does not explicitly include such a requirement.  SSR 16-3p

mentions a claimant's past work only in two contexts.  First, the ruling acknowledges

that "[m]edical sources *may* offer . . . statements and medical reports about an

individual's . . . prior work record [and] efforts to work . . . ." SSR 16-3p, 2017 WL

5180304, at *6 (emphasis added).   Second, the ruling reiterates the step-four

requirement for an ALJ to assess whether the claimant can perform her past relevant

work.  *Id.* at *11.  Neither of those statements represents a mandatory directive to

consider a claimant's work history or willingness to work.

The case law Treadway cites also does not assist her argument.  She relies upon

the Middle District of Florida's decision in *Lafond v. Comm'r of Soc. Sec.*, No. 6:14-CV-

1001-ORL-DAB, 2015 WL 4076943 (M.D. Fla. July 2, 2015), where the court stated

that 20 C.F.R. § 404.1529(c)(3), SSR 96-7p (which SSR 16-3p supplanted), and decisions

from other courts of appeals "advise the ALJ to consider a claimant's prior work record

and efforts to work as part of the credibility assessment."  *Id.* at *9.[6]  Thus, according

to *Lafond*,

> an administrative law judge *must* consider a long and continuous past work
> record, with no evidence of malingering, as a factor in determining the
> credibility of assertions of disabling impairments, reasoning that it is
> unlikely someone would trade in their productive, and lucrative, work
> career for the far less lucrative "career" of receiving disability benefits.

---

[6] SSR 16-3p, effective March 28, 2016, eliminated the use of the term "credibility" as it relates to
assessing the claimant's complaints of pain and clarified that the ALJ "will consider any personal
observations of the individual in terms of how consistent those observations are with the individual's
statements about his or her symptoms as well as with all of the evidence in the file."  SSR 16-3p, 2017
WL 5180304, *7.

*Id.* (emphasis added) (citing *Horan v. Astrue*, 350 F. App'x. 483, 484 (2d Cir. 2009) (in turn citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (noting that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability")) (alteration in original); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *Podeworney v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980)).

SSR 96-7p, which *Lafond* cited, contained more specific language directing ALJ's, in their consideration of a claimant's "statements about pain or other symptoms and about the effect the symptoms have on [the claimant's] ability to function," to assess "[s]tatements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, *prior work record and efforts to work*, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." *See* SSR 96-7p, 1996 WL 374186, at *5 (emphasis added). However, as discussed, SSR 16-3p, which superseded SSR 96-7p, does not contain any language mandating consideration of a claimant's work history. Therefore, *Lafond*'s reliance upon SSR 96-7p diminishes its persuasive value.

The Eleventh Circuit has not adopted a bright-line rule requiring an ALJ to explicitly consider a claimant's extensive work history, and other district courts within the Eleventh Circuit overwhelmingly have declined to do so. *See Ghakarhi B. v. Comm'r,*

*Soc. Sec. Admin.*, No. 1:21-CV-01382-RGV, 2022 WL 4397529, at *18 (N.D. Ga. Sept. 22, 2022) ("[T]here is no absolute requirement – under either SSR 16-3p or 20 CFR 404.1529 – for [an ALJ] to discuss claimant's work history."); *Gordon v. Comm'r of Soc. Sec.,* No. 2:19-CV-890-NPM, 2021 WL 1207755, at *10 (M.D. Fla. Mar. 31, 2021) ("Although the regulations require an ALJ to consider all of the evidence, including prior work history, in formulating the RFC, nothing requires an ALJ to explicitly discuss that work history as part of a subjective symptom evaluation."); *Brothers v. Berryhill*, No. 4:18-CV-01557-JEO, 2019 WL 3555064, at *4 (N.D. Ala. Aug. 5, 2019) ("[E]xcellent work history alone may be insufficient to enhance a claimant's credibility, but it does not necessarily result in a remand when it is not considered by the ALJ as long as the credibility determination is supported by substantial evidence"); *Carson v. Colvin*, No. CV416-083, 2017 WL 360925, at *5 n.6 (S.D. Ga. Jan. 6, 2017), *report and recommendation adopted,* No. CV 416-083, 2017 WL 354859 (S.D. Ga. Jan. 24, 2017) ("This Court declines . . . to create a new standard to require an ALJ to *explicitly* discuss a plaintiff's work history as part of his credibility finding.") (emphasis in original); *Collins v. Berryhill*, No. CV 116-019, 2017 WL 3613988, at *11 (S.D. Ga. Aug. 1, 2017), *report and recommendation adopted,* No. CV 116-019, 2017 WL 3613039 (S.D. Ga. Aug. 22, 2017) ("It is well established that an ALJ *may* consider a claimant's work history in evaluating her credibility.") (emphasis added).

Other district court decisions have reasoned *Lafond* does not create a bright-line rule requiring consideration of a claimant's work history, because in *Lafond*, the ALJ's

failure to discuss the claimant's work history did not constitute the only reason to remand for a more thorough assessment of the consistency of the claimant's subjective complaints with record evidence. *See Stevens v. Comm'r of Soc. Sec.*, No. 3:21-CV-715-MRM, 2023 WL 1433441, at *11 (M.D. Fla. Feb. 1, 2023) ("[I]n *Lafond*, the Court remanded not on the failure to discuss Plaintiff's work history when undertaking the subjective symptom evaluation but because the subjective symptom evaluation as a whole lacked substantial evidence."); *Gibson v. Kijakazi*, No. CV 321-027, 2022 WL 2127705, at *7 (S.D. Ga. May 16, 2022), *report and recommendation adopted,* No. CV 321-027, 2022 WL 2118325 (S.D. Ga. June 13, 2022) ("Although the Court in *Lafond* found the ALJ failed to consider the plaintiff's strong work record when assessing her credibility, the Court did not remand the ALJ's disability determination solely on that basis. Rather, the court remanded the ALJ's decision on its conclusion that the ALJ's credibility assessment, as a whole, was not based on substantial evidence."); *Larson v. Comm'r of Soc. Sec.*, No. 3:19-CV-261-J-PDB, 2020 WL 1329986, at *13 n.9 (M.D. Fla. Mar. 23, 2020) ("To the extent Larson relies on *Lafond*, the Court observes it is a nonbinding case and involved other errors warranting remand."); *Neff v. Saul*, No. 8:18-CV-3040-T-SPF, 2020 WL 1181952, at *6 (M.D. Fla. Mar. 12, 2020) ("Although the Court in *Lafond* found the ALJ failed to consider the plaintiff's strong work record when assessing his credibility, the Court did not remand the ALJ's disability determination solely on that basis. Instead, the court remanded the ALJ's decision on its conclusion that the ALJ's credibility assessment, as a whole, was not based on substantial

evidence.").

This court finds these decisions persuasive, as they comport with the Eleventh Circuit's long-held principle that "[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11ᵗʰ Cir. 2021) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11ᵗʰ Cir. 2005) (*per curiam*)).  As discussed above, the record as a whole, and particularly the medical evidence, provides substantial evidentiary support for the ALJ's RFC finding.

In any event, the ALJ in this case *did* consider Treadway's past work, just not explicitly in the context of assessing the consistency of Treadway's subjective complaints with the remainder of the record.  During the administrative hearing, the ALJ gathered information about all of Treadway's past relevant work for the benefit of the vocational expert (Tr. 41-44), and she questioned the vocational expert about the ability of hypothetical individuals with various hypothetical RFC's to perform Treadway's past work.  (Tr. 63-65).  In the administrative decision, the ALJ characterized Treadway's past relevant work as light and semi-skilled, and she concluded an individual with Treadway's RFC could perform such work.  (Tr. 28-29).  For this reason, in addition to the others discussed previously, the court finds no error in the ALJ's treatment of Treadway's work history.  *See Mahon v. Comm'r of Soc. Sec.*, No. 8:16-CV-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) ("Although

the ALJ did not expressly discuss Plaintiff's work history in assessing her statements regarding her symptoms, it is clear the ALJ reviewed and considered statements regarding her prior work record."); *Coleman v. Astrue*, No. 8:11-CV-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) ("While the law judge did not discuss the plaintiff's work history specifically in the context of her credibility finding, she obviously considered the plaintiff's work history in making her decision.").

In summary, the ALJ did not err in assessing Treadway's RFC.  Treadway urges the court to weigh the evidence differently than the ALJ did, but the court's review of the ALJ's decision does not encompass reweighing the evidence.  *See Winschel*, 631 F.3d at 1178 (the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").  As substantial evidence supported the ALJ's RFC finding, the court will affirm the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 11th day of March, 2024.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE